**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

AMPARO and ROBERT MATA,

Plaintiffs,

vs. No. 12-CV-00136 MCA/SMV

BOARD OF EDUCATION OF
LAS CRUCES PUBLIC SCHOOLS,

Defendant.

**MEMORANDUM OPINION AND ORDER**

This case is before the Court upon Defendant's Motion for Summary Judgment [Doc. 43] The Court has considered the parties' written submissions, the record in this case and the applicable law, and is otherwise fully advised. Defendant's motion will be granted in part and denied in part.

**Summary Judgment Standards**

Rule 56(a) of the Federal Rules of Civil Procedure provides that “[a] party may move for summary judgment, identifying each claim . . . on which summary judgment is sought. . . .The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” As our Court of Appeals has succinctly stated, "[a] fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). “The factual record

and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008). "[T]he movant for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thomas v. Avis Rent a Car*, 408 Fed. Appx. 145, 151 (10th Cir. 2011) (citing *Adler v. Wal-Mart Stores, Inc.*,144 F.3d 664, 670-71 (10th Cir. 1998)). It is only after this initial burden is satisfied that the burden of responding shifts to the non-movant. *Id.* "[T]he non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003).

**Background**

Plaintiffs are the parents and legal representatives of M.M., a young girl born in December 2000. M.M. suffers from osteogenesis imperfecta, a genetic condition that results in unusually fragile (brittle) bones. During the 2009-2010 school year, M.M. was in the third grade at Hermosa Heights Elementary School, a public school administered by Defendant. In August 2009, a Section 504 Committee found that M.M. had a physical disability that substantially limited one or more major life activities and that M.M. was eligible for services under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. [Doc. 43 at 28-30; Doc. 49-4] The Committee adopted an accommodation plan that required, *inter alia*:

> Supervised walk from drop off/pick up area into the building and to designated locations. (classroom, cafeteria) Mother will walk [M.M.] into the building in the morning and pick her up in the classroom at the side door of the building.

While at school on September 25, 2009, M.M. fell and fractured her left wrist. This injury resulted in further accommodations proposed by M.M.'s doctor. [Doc. 43 at 30] Joseph Mestres, the assistant principal, contacted the teachers working with M.M. to review the accommodations required by M.M.'s plan. [Doc. 43 at 15-16].

The administration of Hermosa Heights Elementary School had adopted an informal, approximately twice-a-year practice of laying out on a floor clothing and other items from the lost and found so that children could retrieve misplaced belongings. A custodian would neatly lay out the items along the walls, but the items were disturbed by children as they looked through the items searching for their belongings. [Doc. 49-2 at 2-3] This practice was being carried out on January 13, 2010. On this occasion, the clothing and other items were laid out on both sides of the hallway. [Doc. 49-1 at 4] The hallway in question was used by teachers, students, and visitors.

At the end of the school day on January 13, 2010, Plaintiff Amparo Mata arrived at M.M.'s classroom a few minutes after the end of classes at 2:30 p.m. to find that M.M. was not in the classroom. Prior to Mrs. Mata's arrival, M.M. had left the classroom and accompanied by three other students, had proceeded into the hallway where the lost and found items were temporarily arrayed on the floor. On this day, M.M. was aided by the use of crutches; her crutch slipped on a jacket laid out on the floor of the hallway. M.M. fell to the floor, suffering a fracture to her left femur.

**Negligence**

In its previous Memorandum Opinion and Order [Doc. 57], the Court concluded that Plaintiffs' negligence claim falls within the waiver of sovereign immunity set out in NMSA

1978, § 41-4-6. Given that determination, Plaintiffs' negligence claim presents a relatively straightforward slip-and-fall claim. "Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 134 N.M. 43, 47-48, 2003-NMSC-018, ¶ 6. Here, a reasonable factfinder could find that M.M.'s regular teacher, Ms. Nelson, was negligent in allowing M.M., a child known to have fragile bones and whose accommodation plan required her to be escorted by an adult when moving about the school, to leave the classroom unescorted by her mother or another adult. *See Upton v. Clovis Mun. Sch. Dist.*, 140 N.M. 205, 2006-NMSC-040, ¶ 13 ("[A] school cannot simply cannot operate in a safe, reasonable, and prudent manner without affording, at the very least, the health and safety services that students have been promised, and upon which parents have relied."). Alternately, New Mexico law imposes on the owners of premises a duty to use ordinary care to keep the premises safe for use by visitors. NMRA 13-1315. A reasonable factfinder could find that, however well-intentioned they may have been, Defendant's employees were negligent in leaving clothing and other personal items on the floor of a school hallway regularly used by teachers, students and visitors. Lastly, a reasonable factfinder could find that the breaches of duty committed by Defendant's employees

were both the cause-in-fact and legal cause of M.M.'s injuries.[1] The Court will deny Defendant's summary judgment as to this claim.

**Rehabilitation Act of 1973/ADA Title II**

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." "A prima facie case under § 504 consists of proof that (1) plaintiff is handicapped under the Act; (2) he [or she] is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Miller v. Bd. Educ. of the Albuquerque Pub. Sch.*, 565 F.3d 1232, 1246 (10th Cir.2009) (internal quotation marks omitted). Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, provides that "no qualified

[1]The Court finds Defendant's reliance on the testimony of Dr. George Harrington to defeat "but for" causation to be misplaced. Most obviously, this is not the type of case, *e.g.*, a medical malpractice action, in which the plaintiff must prove causation through expert medical testimony. Moreover, even if Plaintiffs were required to offer expert testimony on causation, any such requirement easily would be satisfied by Dr. Harrington testimony that to a reasonable degree of medical probability the fall on January 13, 2010 caused M.M.'s femur to break. [Doc. 49-3 at 2] Although Dr. Harrington also testified that there was no way of knowing for certain whether the fall caused the break or the break caused the fall, what he meant by this testimony is not entirely clear. Given his testimony that the fracture was of a kind that occurs when a weakened bone fails with rotation, one reasonable interpretation of Dr. Harrington's testimony is that he could not tell when in the fall the twisting occurred. For example the break might have occurred as M.M.'s crutch slipped, twisting her leg and causing her to fall due to a lack of support from her broken femur; or the break might have occurred from a twisting motion as her leg struck the floor. Under either alternative, a reasonable factfinder could find that M.M.'s femur would not have been broken but for her crutch slipping on an item of clothing. As to whether M.M.'s femur could have fractured from the stress of a misstep, rather than a blow or fall, Dr. Harrington testified that "I suppose so. But I couldn't be sure." [Doc. 43 at 27] Dr. Harrington's testimony does not eliminate genuine issues of material fact as to whether the fracture was caused by the practice of laying clothes on the floor of the hallway.

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." A prima facie case under Title II requires a plaintiff to prove that "(1 ) he [or she] is a qualified individual with a disability;" (2) "that he [or she] was either excluded from participation in or denied the benefit of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity," and (3) "that such exclusion denial of benefits, or discrimination was by reason of the plaintiff's disability." *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999) (quoting *Tyler v. City of Manhattan*, 849 F. Supp 1429 (D. Kan. 1994)). To establish an entitlement to compensatory damages under the Rehabilitation Act, Plaintiffs must show that Defendant intentionally discriminated against M.M. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999). Although the law with respect to Title II of the ADA is not as well established, *Moseley v. Bd. of Educ. of Albuquerque Pub. Sch.*, 483 F.3d 689, 693 (10th Cir. 2007), the Court is persuaded that when squarely presented with the issue our Court of Appeals will require a plaintiff to show intentional discrimination to establish entitlement to compensatory damages under Title II, *see Miles v. Cushing Pub. Sch.*, 2008 WL 4619857 (W.D. Okla. Oct. 16, 2008) (reviewing precedent; concluding that Title II requires intent, but that intent may be demonstrated under a "deliberate indifference" standard). Intent may be established by evidence of "deliberate indifference": *i.e.*, "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that . . . likelihood." *Barber ex rel. Barber v. Colorado Dept. of Rev.*, 562 F.3d 1222, 1229 (10th Cir. 2009) (internal quotation marks omitted).

As the Court understands Plaintiffs' position with respect to their § 504 claim, Plaintiffs are not arguing that the substance of M.M.'s accommodation plan shows deliberate indifference to M.M.'s right to participate in the educational programs offered by Defendant. Rather, Plaintiffs are relying on Defendant's failure to prevent M.M. from leaving the classroom without an accompanying adult contrary to the terms of her accommodation 504 plan to show deliberate indifference.

Clearly, Plaintiffs cannot avoid summary judgment on the theory that Defendant itself, or its individual members, knew that M.M.'s accommodation plan was not being properly implemented or that, having such knowledge, they failed to act. There is no evidence proffered of what Defendant or its individual members knew about M.M.'s accommodation plan or how it was being implemented. It appears that Plaintiffs seek to hold Defendant vicariously liable for the deliberate indifference of its employees or agents. Although our Circuit has not yet spoken on the issue, other Circuits have applied vicarious liability in actions under the Rehabilitation Act and Title II of the ADA . *See Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574-75 (5th Cir. 2002) (collecting authorities). This Court assumes, without deciding, that Defendant can be held liable under the Rehabilitation Act or Title II of the ADA if Defendant's employees acted with deliberate indifference toward M.M.'s rights.

There clearly is evidence supporting findings that Principal Risner-Schiller, Assistant Principal Mestres, and Nurse Castillo were aware of M.M.'s disability, the existence and terms of M.M.'s accommodation plan, and the risk of serious physical harm to M.M. if her plan was not properly implemented. What is missing from the record is evidence that would permit a factfinder to conclude that these individuals had knowledge that M.M.'s accommodation plan

was not being consistently and properly implemented, or that with knowledge of noncompliance, these individuals failed to take action to insure that M.M.'s. accommodation plan was consistently and properly implemented .

Ms. Nelson, as M.M.'s regular teacher and the teacher who was present on January 13, 2010, when M.M. left the classroom without an adult, is somewhat differently situated. Assistant Principal Mestres recalled giving "everybody" a copy of M.M.'s accommodations, and a jury could infer that Ms. Nelson, as M.M.'s regular teacher, was included in "everybody." Ms. Nelson testified that she was aware that M.M. had brittle bones and needed to be careful moving through the school. A reasonable factfinder could conclude that as of January 13, 2010, Ms. Nelson had knowledge that allowing M.M. to walk unescorted by an adult placed M.M. at risk of serious physical injury. This knowledge satisfies the first prong of the definition of deliberate indifference. However, Ms. Nelson could not recall how M.M. left the classroom at the end of the January 13, 2010, school day, and there is no other evidence of how M.M. left the classroom before Mrs. Mata arrived. In particular, the Court notes that the record does not include M.M.'s recollection of how she came to walk out of the classroom without the assistance of an adult. There is no evidence proffered of how well Ms. Nelson adhered to M.M.'s accommodation plan on other occasions. The January 13, 2010, incident is the only incident documented in the record where Ms. Nelson failed to keep M.M. in the classroom until Mrs. Mata arrived. On this record a factfinder would have to speculate to find that Ms. Nelson acted (or failed to act) on January 13, 2010, with the culpable state of mind required by the second prong of the definition of deliberate indifference. "Deliberate indifference does not occur where a duty to act may simply have been overlooked. . . .a failure to act must be a result of conduct that is more than

negligent, and involves an element of deliberateness." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). The Court concludes that Plaintiffs have failed to demonstrate a genuine issue of material fact as to the requisite *mens rea* of deliberate indifference as it applies to their claim under the Rehabilitation Act.

Turning to Plaintiffs' claim under Title II of the ADA, the Court concludes that evidence has been proffered that would allow a reasonable factfinder to find that Defendant's employees were responsible for placing clothing and other personal items on the floor of the hallway and that they knew that this hallway was used by teachers and students. What is missing is evidence that any employee recognized that the practice of placing clothing and other personal items on the floor of the hallway might interfere with M.M.'s access to educational programs. There is no evidence that anyone had slipped on the clothing prior to the January 13, 2010, incident involving M.M. While the staff at Hermosa Heights Elementary School may have been negligent in failing to appreciate the hazard that the practice created for M.M., deliberate indifference requires conduct that "is more than negligent, and involves an element of deliberateness." Plaintiffs have failed demonstrate a genuine issue of material fact as to the requisite *mens rea* of deliberate indifference.

**Other Arguments**

Lastly, the Court addresses three arguments proffered by Defendant, none of which are persuasive.

First, Defendant argues that Plaintiffs' response was untimely. [Doc. 52 at 1] The docket establishes that Defendant's motion for summary judgment was electronically filed on October 16, 2012. Pursuant to D.N.M. LR-Civ. 7.4, Plaintiffs' response was due within fourteen days,

computed in accordance with Fed. Civ. P. Rule 6(a) and (d). Pursuant to Rule 6(a)(1)(A), the fourteen days began to run on October 17, 2012, and expired on October 31, 2012. However, by operation of Rule 6(d), which incorporates Rule 5(b)(2)(E), the fourteen day period was extended by three days. Plaintiffs' response, which the docket shows was filed electronically on November 2, 2012, was timely.

Second, Defendant argues that "Plaintiffs have not shown how the fact that M.M. suffers from Osteogenesis Imperfecta substantially limits one of life's major activities." [Doc. 43 at 7] In its Amended Answer, Defendant admitted ¶ 19 of the Complaint, which alleged that "[a]s a result of Osteogenesis Imperfecta, M.M. has a physical impairment that substantially limits one or more major life activities, including physical movement." Defendant is bound by this judicial admission. *E.g.*, *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005); *Gibbs v. Cigna Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).

Finally, Defendant argues that the Court should give "preclusive effect" to a mediated settlement of administrative claims entered into by Defendant and Plaintiffs several months after M.M.'s fall. [Doc. 43 at 8] It is not clear from Defendant's desultory discussion whether the claimed preclusive effect derives from res judicata, accord and satisfaction,[2] or some other theory. D.N.M. LR-Civ. 7.1 requires a movant to "state with particularity the grounds and the relief sought" and to "cite authority in support of the legal positions advanced." Defendant's brief does

[2]Accord and satisfaction and res judicata are affirmative defenses. Fed. Civ. P. Rule 8(c)(1). As the party asserting affirmative defenses, Defendant bears the burden of pleading and proving them. *Pelt v. Utah*, 539 F.3d 1271, 1283 (10th Cir. 2008). Furthermore, to the extent that Defendant is seeking enforcement of a settlement agreement, Defendant bears burden of establishing that its interpretation controls. *Farmington Police Officers Assn. v. City of Farmington*, 139 N.M. 750 (Ct. App. 2006).

not reflect a meaningful effort to comply with these requirements, the Court will deny the requested relief.

**Conclusion**

The Court will deny summary judgment as to Plaintiffs' Negligence claim; the Court will grant summary judgment in Defendant's favor as to the remaining federal claims.

**WHEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. 43] is **denied** as to Plaintiffs' Negligence claim, and is **granted** as to Plaintiffs' remaining federal claims.

So Ordered this 21st day of May, 2013

M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE